**IN THE COURT OF APPEALS OF IOWA**

No. 21-0996
Filed March 30, 2022

**CAVALRY SPV I, LLC,**
    Plaintiff-Appellee,

**vs.**

**KENNETH W. BROWN,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Fremont County, Margaret Reyes,

Judge.

Kenneth Brown appeals the district court's order granting summary

judgment in favor of Cavalry SPV I, LLC. **AFFIRMED.**

Jon H. Johnson of Johnson Law, P.L.C., Sidney, for appellant.

Christopher Low of Blitt & Gaines, P.C., Des Moines, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**VAITHESWARAN, Judge.**

Debt collector Cavalry SPV I, LLC, purchased a credit card account from Citibank, N.A. Cavalry sued Kenneth W. Brown alleging he had "a revolving credit card account"; Brown "failed to pay the amount due and owing" even after receiving a "demand"; and judgment should be entered against him for $7096 and court costs. Brown filed an answer denying Cavalry's allegations and affirmatively stating he "never had a credit card from Citibank" and he "never held a Citibank credit account" with the designated number. Cavalry moved for summary judgment. Brown resisted, attesting to the affirmative statements he raised in his answer. Following an unreported hearing, the district court granted the motion and entered judgment in favor of Cavalry "in the amount of $7096, plus interest after date of judgment, and for the costs of this action." Brown appealed.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). Our review is for correction of errors at law. *See Barker v. Capotosto*, 875 N.W.2d 157, 161 (Iowa 2016).

Iowa Code section 537.5114 (2020) states:

> 1. In an action brought by a creditor against a consumer arising from a consumer credit transaction, the complaint shall allege the facts of the consumer's default, the amount to which the creditor is entitled, and an indication of how that amount was determined.
> 2. No default judgment shall be entered in the action in favor of the creditor unless the complaint is verified by the creditor, or

unless sworn testimony, by affidavit or otherwise, is adduced showing that the creditor is entitled to the relief demanded.[1]

The court of appeals interpreted this consumer credit code provision in *Capital One Bank (USA), N.A. v. Denboer*, 791 N.W.2d 264 (Iowa Ct. App. 2010). We concluded a common law "account stated" action could coexist with section 537.1114. *Denboer*, 791 N.W.2d at 280. We held:

> [A] creditor seeking to recover a credit card debt from a consumer must either:
>
> (1) *Meet the requirements of account stated*, by providing an account agreement with the consumer, a final or "charge-off" statement with the consumer's address, and a sworn statement from a person with knowledge that regular monthly account statements were sent to the consumer at the address provided by the consumer, the charge-off statement is the sum total of those statements, the consumer used the credit card, and the consumer never objected to the monthly statements. If the creditor cannot prove the consumer never objected to any item, as an alternative the creditor may provide a sworn statement detailing the objections and demonstrating they were resolved without further objection by the customer, or a statement establishing that during the last 90 days before the charge-off statement (or during any longer period of time leading up to the charge-off statement), the customer used the credit card and made no objections during that time.
>
> (2) *Provide an itemization of the debt it is seeking to recover*, by filing an account agreement with the customer and a transaction history ending at a recent charge-off statement, together with a sworn statement from a person with knowledge authenticating these two items. In this event, the creditor is limited to recovering any increase in debt shown on the transaction history, plus ongoing interest.

*Id.* at 282 (emphasis in original).

Applying *Denboer*, the district court made the following determinations:

> . . . Cavalry submits a number of statements in Brown's name showing charges on the account and showing that interest was calculated for both purchases and a balance transfer. This is

---

[1] Although the provision refers to a "default judgment," the requirements imposed upon a creditor seeking to collect a debt are equally applicable in the summary judgment context.

sufficient evidence that Brown use[d] the account and thereby agreed to the terms of the Citibank agreement. While Brown denies using the account or receiving any monthly statements, Cavalry provided twelve (12) Citibank monthly statements mailed to Brown at addresses that Brown doesn't dispute were his addresses. Three of those statements show that online payments were made on the account. And one statement shows the resolution of a disputed charge on the account. This is evidence that Brown was aware of the account and used the account. Brown admits in his answer that he received the "Notice to Cure" prior to the filing of the petition.[2]

In light of the documents provided by Cavalry set out above, the court finds that Cavalry has established the elements of the account stated recovery under the ICCC and *Denboer* and is entitled to summary judgment in this matter. Brown's affidavit of denial alone, without more, fails to create a genuine issue of material fact for trial.

Brown argues the district court erred in (1) "finding that there was a binding agreement" with Citibank, N.A. "because there is no signed agreement or evidence of an oral or implied agreement" and (2) "awarding compensation for the claims in an amount that was not determinable." He concedes the district court "correctly" stated that "a factual issue does not arise simply from the claim that one exists" and he "must set forth specific evidentiary facts showing the existence of a genuine issue of material fact." In his view, he did so with his attestation that he "never had a Citibank, N.A. credit card" and Cavalry's failure to provide "credit card documents signed by" him. He also points to the absence of transactions for a period of time before Cavalry sent him a copy of the credit card agreement.[3]

---

[2] Iowa Code section 537.5110(1) states, "Notwithstanding any term or agreement to the contrary, the obligation of a consumer in a consumer credit transaction is enforceable by a creditor only after compliance with this section . . . ." Section 537.5110(2)(a) requires the creditor to give a consumer who has a right to cure a default "the notice of right to cure provided in section 537.5111."

[3] Cavalry responds that Brown failed to preserve error. We disagree, and we address the merits.

As the district court noted, the consumer credit code defines "[a]greement" as "the oral or written bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance." Iowa Code § 537.1301(4). The definition does not require a document signed by the consumer. *Id.*; *Citibank S. Dakota, NA v. Machleid*, No. 63409–7–I, 2010 WL 428006, at *2 (Wash Ct. App. Feb. 8, 2010) (in debt collection action by Citibank, stating the bank was "not required to provide the initial agreement or the application that [the debtor] signed" and was only required to show that the debtor "was bound by the terms of the amended card agreement"); *see also Citibank South Dakota*, *N.A. v. Johnson*, 220 S.W.3d 894, 895 (Tenn. Ct. App. 2006) ("Both federal law and State law provide that a signed agreement/application is not always required to obtain a credit card.").

Cavalry attached a credit card agreement to its summary judgment motion. The stock agreement stated it was the consumer's "contract with [Citibank]." Cavalry also attached credit card statements listing Brown as the account holder and listing two addresses including the one at which he was served with process. The statements noted that Brown was a "[m]ember [s]ince 2017." They showed a balance transfer and "standard purchases." *See Portfolio Recovery Assocs.*, *LLC v. Eldred*, No. 2 CA-CV 2020-0164, 2021 WL 3160436, at *3 (Ariz. Ct. App. July 26, 2021) ("Although the record did not include an express agreement between the bank and [the debtor], [a] cardholder's acceptance of the terms and conditions of a credit card account may be established by a showing that [a]ny cardholder or authorized user use[d] the credit card account." (internal quotations omitted)). One statement indicated that a billing dispute was "now considered

resolved." A "final" statement showed a balance of $7096, the identical amount sought by Cavalry. An authorized agent of Calvary attested she reviewed the account and "periodic statements were provided to [Brown]" as was a "final statement . . . evidencing the sum total of all previous amounts due and owing as of the closing date of the statement."

True, the attached statements did not go back to the moment the account was opened with a zero balance. But as the court stated in *Denboer*, "the Iowa statute does not explicitly require a full itemization or a transaction history. It only requires 'an indication of how [the amount claimed by the creditor] was determined.'" 791 N.W.2d at 278 (quoting Iowa Code § 537.5114(1)). In any event, Cavalry's authorized agent attested that "at no time prior to the commencement of this action did [Brown] communicate to [Cavalry], either orally or in writing, of any unresolved dispute with the account." *See ITT Fin. Servs. v. Zimmerman*, 464 N.W.2d 486, 489 (Iowa Ct. App. 1990) (reversing default judgment in favor of creditor but stating "[s]worn testimony adduced at trial showing that a creditor is entitled to the relief demanded would also allow this computation" of the amount claimed by the creditor); *Citibank*, *N.A. v. Surber*, No. 14-0190, 2015 WL 5278952, at *1 (Iowa Ct. App. Sept. 10, 2015) (noting debtor "failed to contradict—with supporting authority or legally cognizable claims—any of [the bank's] evidence, nor did he show he ever objected to any of the monthly statements"); *Eldred*, 2021 WL 3160436, at *3 ("[T]he lack of timely response to [the creditor's] letter shows the [debtor's] assent to the amount claimed—and that amount is consistent with the provided bank statements.").

We conclude Brown did not generate an issue of material fact precluding entry of summary judgment and the district court did not err in granting summary judgment in favor of Cavalry.

**AFFIRMED.**